Hagarty, Acting P. J.
The Long Island Lighting Co., here-' inafter referred to as the petitioner, is the owner of a plot of land on the easterly side of Hempstead Harbor, through which' Shore Road runs north and south, in that community in the Town of Oyster Bay known as Glenwood Landing. The prop-' erty has an average width or frontage on each side of Shore Road of' approximately 850 feet. The land on the westerly side of the road runs to the water, an average distance of 185 feet, but beyond that there is a bulkhead line which is 350 feet west of the road. It runs easterly from the road a distance of approximately 1,300 feet. All of this land is classified under the Town of Oyster Bay Building Zone Ordinance in what is known as “ Industrial I ” use district, save .that part of it which is east of a line 800 feet east of the road, which part is in a residence use district. “ Industrial I ” district uses, freely permitted under the zoning ordinance, include' ice and ice cream manufacture, milk bottling or central distributing station, dyeing or dry cleaning plant, power laundry, street car barn, railroad yards, coal, coke or lumber yard, storage of live poultry or poultry killing or dressing for sale at retail, dairy,, motor vehicle repair shop, foundry, central electric light or power generating plant and central steam plant. Certain other uses expressly are permitted, inclusive of “ Gas manufacture from coal, coke or petro-, leum, or the storage thereof” subject, however, to authoriza-' tion by the Board of Zoning Appeals, hereinafter referred to as the Board, “When in its judgment the public convenience and welfare will be substantially served and the appropriate! use of neighboring property will not be substantially or permanently injured, ***.”
*553 Petitioner made application to the Board on the 3d day of January, 1947, for permission to erect a gas manufacturing plant and storage holder on such of its property as lies within the “Industrial I” use district. After hearings had been conducted in January and March of 1947, the Board denied the application by a three to two vote, of which decision petitioner received notice by postcard on or about the 2d day of May, 1947= The stated grounds were (1) that the evidence indicated that the erection and operation of the plant and storage facilities would substantially and permanently injure the appropriate use of the neighboring property amp (2) that the company had not established the location of the plant on the water front at Glenwood Landing to be unique in that it is the only suitable site. The Board also found that no evidence was presented which indicated that the property-would not yield a reasonable return if limited to the uses now allowed by the present zoning and that the owner did not prove undue hardship as the result of the present character of the zoning. This latter finding is immaterial. This was not an application for a variance dependent upon a showing of undue hardship. It was an application to use the property as expressly contemplated by the ordinance, subject only to authorization of the Board. (Cf. Matter of Reed v. Board of Standards and Appeals, 255 N. Y. 126.)
There can be no question of the dire need of petitioner for additional facilities. The backbone of its system is a line of transmission extending from its existent gas manufacturing plants at Far Bockaway, Garden City and Bay Shore. There ¡is no plant on the north shore of Long Island, although in that area the present demand is sixteen million cubic feet a day and there is a prospective demand of twenty-five million cubic feet. The present facilities have been overtaxed to the extent that on two occasions immediately preceding the hearings, petitioner was required to send warnings to present users that ■the supply was inadequate and subsequently was compelled to curtail service. Petitioner has been required to apply to,' the Public Service Commission for permission to discontinue acceptance of applications for gas heaters, but even so, it has on its boobs two thousand of such pending orders. A formid-: able volume of house building in Nassau County portends heavily increased demands. Indeed, an expert, testifying in! opposition to the application, was of the opinion that the plant proposed to be built by petitioner was too small for its needs and that petitioner had underestimated the future deficit between demand and production.
*554 The site, concededly, is in an area which is fundamentally industrial. The expert for the opposition to the application so testified. Immediately to the south of the site, are a ship-j yard and a parcel maintained by an oil company on which, among other structures, there are four fairly large tanks and four smaller tanks. Farther to the south and about fifteen' hundred feet away is a large power plant maintained by ¡ petitioner, in the rear of which are numerous large tanks. To the north and east is a golf course. There is no residence nearer to this proposed plant than twelve to fifteen hundred feet.
The great weight of the credible proof is to the effect that modern equipment to be used in producing gas by water gas process, in the course of which coke rather than coal primarily is used, will serve, if properly maintained, substantially to eliminate offensive features such as dust, pollution of water, noise and odors.
Petitioner, by virtue of statutory authority (Transportation Corporations Law, § 11, subd. 1; Holmes Electric Protective Co. v. Williams, 228 N. Y. 407; Matter of Municipal Gas Co. v. Nolan, 121 Misc. 606, affd. 208 App. Div. 753) and of franchises granted to it or its predecessor by the Town of Oyster Bay (People ex rel. Woodhaven Gas Light Co. v. Deehan, 153 N. Y. 528), has the right, subject to regulation, to erect and maintain a gas manufacturing plant in the Town of Oyster Bay, and no town zoning ordinance enacted subsequent to the granting of such franchises can serve to nullify that right. (Jewish Consumptives’ Relief Soc. v. Town of Woodbury, 230 App. Div. 228,‘ affd. 256 N. Y. 619.)
In view of the right of petitioner to erect a plant and holder and of the nature of the plant as one promoting general welfare, the authority afforded the Board, in effect, is the regulatory power of the Toavu delegated to it. Its discretion was abused in denying the application, for it is evident that the proposed plant is far less detrimental to neighboring property than other uses freely permitted in that industrial district.
The determination of the Board should be annulled, with- . out costs, and the Board directed to grant permission to petitioner to erect its proposed plant and holder' upon the filing. with the Board of its plans and specifications, which shall, however, be subject to such reasonable conditions and safeguards as may be imposed by the Board.
'Johnston, Adel, Nolan and Sneed, JJ., concur.
*555 Determination of the Board of Zoning Appeals of the Town of Oyster Bay annulled, without costs, and the Board of Zon-' ing Appeals is directed to grant permission to petitioner to erect its proposed plant and storage holder upon the filing) with said Board of petitioner’s plans and specifications, whichj shall, however, be subject to such reasonable conditions and) safeguards as may be imposed by the Board of Zoning Appeals, j